The issue on appeal is whether the college is an arm of the Confederated Salish and Kootenai Tribes, and that exclusion extends to businesses that are an arm of the tribe. As this court is aware, in arm of the tribe analysis, the court looks to the five-factor test set forth in white versus University of California to determine whether an employer or an entity is an arm of the tribe. In this particular case, before getting directly to those five parts, I think it's important to determine whether the Salish Kootenai College, Inc. under the Montana law is separate and distinct from the Salish Kootenai Community College, Inc. under the tribal laws, because I believe that those articles of incorporation are used in analysis of several of the different white factors. It's our contention that the two entities, the tribal corporation and the Montana corporation, are separate and distinct legal entities, and that the Salish Kootenai College that is before this court, the defendant before this court, is operating under the Montana articles of incorporation. Has that argument been rejected by other courts? I believe that that argument has, there's been holdings that said dual incorporation doesn't affect sovereign immunity. I think in cases with different questions, I think in Smith versus Salish Kootenai College, where they were talking about a tort claim brought by a non-Indian against the college, I believe there was discussion of dual incorporation, but I also believe that not knowing the record in that case, I think, and also knowing that they didn't apply the arm of the tribe analysis, I think we can get to a different resolution here today in looking at the record in this case. Is it your position that incorporation under the Montana law constitutes a sort of coming out or a waiver of tribe sovereign immunity? Because the Montana statute says sue or be sued, right? The Montana articles certainly say sue or be sued, pardon me, sue or be sued, but I think... I mean, do we have any case that deals exactly with this issue and say, you're still a tribe corporation when you're an arm of the tribe, but when you become a state-incorporated entity, you waive or you take yourself outside of the sovereign immunity for purposes of jurisdiction? Do we have any case that says that? I'm not sure. Well, certainly... Well, maybe you're not arguing that. I really am not, but I guess to partially answer that question... Forgive me. Oh, no, that's okay. I mean, I guess that's part of what I'm arguing, but... Then I go back to my question to you because that's what I have in mind here. When the college that's incorporated under the tribal law chooses some years later to be incorporated under the Montana law, does that in effect a waiver of sovereign immunity? Pardon me. I should have... Why don't we stop the argument for just a second and... I'll be joining you in a minute. Let's take a five-minute break. It's my error. I should have declared a break. Would you add two minutes to the gentleman's time so we can start again? Yes, sure. All right. Please excuse me for interrupting the session, it's my fault. Thank you, Your Honors. Would you like me to start all the way back at the beginning or... We've got your beginning, go ahead. Okay, perfect. I guess to answer your question, it's my contention, it's our contention that the corporations are two separate and distinct corporations. The fact that there was a tribal corporation already incorporated, the Montana corporation is separate and distinct. The reasoning behind that is the tribal corporation, in its incorporating documents, it sets forth several limited powers and reserves several powers for the tribe itself, whereas the Montana Articles of Incorporation, the Articles of Incorporation that I believe are controlling, don't have any similar limitations and don't reserve any power to the tribe itself either. And this is important because when a corporation is created by the Articles of Incorporation, those incorporating documents set the parameters of the corporation and set its powers. And those powers can't be expanded after that point without formal amendment articles and there aren't any such articles amending the tribal corporation's incorporating documents. And I think that the differing powers and the limitations are very significant in this case and also I think the facts show that the Salish Kootenai College is operating under the Montana Articles of Incorporation. As I stated, the Montana Articles of Incorporation grant broad powers, whereas the tribal articles place limitations on those powers and reserve several rights and powers to the tribe. Your Honor has discussed one, the Montana Articles allow the corporation to sue or be Similarly, in borrowing money, the Montana Articles of Incorporation provide the general power for the corporation to borrow or contract for debt without limitation, while the tribal articles limit the corporation's power and only allow it to borrow from the tribal credit enterprise. Similarly, in buying property, the Montana Articles provide power to have and purchase whereas the tribal articles limit to acquiring property within the boundaries of the Flathead Reservation. As we discussed, or as I discussed, certain powers are also reserved to the tribe under the tribal articles. This includes a power of dissolution of the corporation. Those same powers aren't mentioned anywhere in the Articles of Incorporation of the Montana Corporation. But they're mentioned in the statutes regarding corporations, aren't they, in Montana? Certainly. Regarding dissolution? Dissolution is certainly mentioned, but not, certainly there isn't anything in the statute granting the tribe a power over just any Montana corporation to dissolve. And that's what I'm saying. I'm saying the Articles of Incorporation for the tribe, for the tribal corporations. So you would proceed on the basis that the five white factors really don't enter into this situation because we have two separate corporations and if you were able to get a judgment against the Montana Corporation, you could satisfy it against the assets of the Montana Corporation. No, I think the white factors do apply, Your Honor, and what I'm saying is that in analysis, when we look at our brief and when we look at the college's brief, both of us refer to the Articles of Incorporation. We refer and rely upon the Montana Articles of Incorporation, whereas the college relies upon the tribal Articles of Incorporation to apply the white factors, one being the method of creation. So say when we're talking about the method of creation, the first white factor, the court is supposed to look at the state or where the entity was incorporated, under what laws. And if we have separate and distinct corporations, then the Montana Articles control. And so then when we're looking at that, we would see that the incorporating under Montana law would weigh in supporting that the college is not an arm of the tribe under the first white factor. And that's why I'm saying it's important for us to look at what articles the corporation was incorporated under and what articles it actually follows. And I think we understand this point. Are you going to talk about the white factors? I will. And I guess I just, if I can, I just wanted to make one more. Okay. All right. I'm sorry. And I realize I'm getting short on time. But there is evidence in the record that the college borrows outside of the tribal enterprises. There's promissory notes, or promissory notes are referenced in the college's financial reports from 2004 to 2016 in ER 819, 857, 902, 944, 991, and 1042, which outline promissory notes of First Interstate Bank, Glacier Bank, and several other banks. Like I said, so if we're operating under those articles, then I think first off, the first white factor with the method of creation, you would have an entity created under the state laws of Montana, and that would weigh in favor of finding that it is not an arm of the tribe. I think that also goes to the stated purpose, because when we're talking about the stated purpose, we once again look to the articles of incorporation for those initial purposes that are set forth. And within the articles of incorporation for the Montana Corporation, there's no discussion at all of the tribe or serving direct tribal, and what I mean by tribal, I mean the Confederated Salish and Kootenai tribes, serving their direct tribal self-governance or their direct benefit. It speaks to general educational benefits, and it speaks to benefits of people within the Flathead Indian Reservation, which does comprise members of the Confederated Salish and Kootenai tribe, but it also comprises several people that are non-members that aren't Indian at all. With respect to your point on operation, you also mentioned that the college enters into contracts which incorporates federal non-discrimination provisions. Yes, Your Honor. Is that a point that you wish to make? Yes, Your Honor. Certainly, I think I'll jump to that point. But yes, the college does enter into several contracts with governmental agencies wherein they state that they will be subject to Title VII and to the sanctions that can be granted under Title VII, including institution of cases under Title VII. And that, I think, goes to the fourth white factor, which is the intent of sharing the tribe's sovereign immunity. I think the fact that they're entering into those documents demonstrates that they don't intend on sharing the tribe's sovereign immunity. I also think that going to the third white factor, the structure, ownership, and amount of control that is exercised and could be exercised by the tribe, I believe that, one, when we start with the Articles of Incorporation of the Montana Corporation, clearly there aren't any powers or any rights reserved to the tribe. I also think that the facts themselves show that the tribe doesn't control. The college has repeatedly stated to the United States government in tax filings that no governance decisions of the college are reserved to persons other than the governing body of the college and that the college did not delegate control over management duties to any person other than officers, directors, or trustees of the college. I think they also admit that the college does nothing to control the day-to-day activities of the tribe, realizing that day-to-day control isn't required, but that certainly can be in determining what management or lack of control that they have. The organizational chart of the college details the heads of the administration and departments and fails to list the tribe or anyone specifically affiliated with the tribe anywhere on the chart. The highest entity on the organizational chart is the college board of directors. I guess I reserved the last minute. I'm going to take my water. Good afternoon, Your Honors. May it please the Court. My name is Martin King. I'm an attorney from Missoula. I represent Salish Kootenai College, Inc. With me today is John Harrison. He's the attorney for the Intervenor Confederated Salish Kootenai Tribes of the Flathead Reservation. We're the last case on the last day. I'm the last lawyer. I'm going to try and make it quick. I think the only thing this Court needs to decide is whether or not Judge Christensen's opinion and order finding that the Salish Kootenai College is an arm of the Confederated Salish Kootenai Tribes and therefore excluded as an employer under Title VII of the Civil Rights Act is supported by a preponderance of the evidence. Clearly it is. Preponderance or substantial evidence? Preponderance of the evidence, Your Honor. Clearly it is. And just as a way of background, Mr. McCoy was employed from 2016-2017, academic year, under a one-year written contract as academic director. In December of 2016, he voluntarily terminated his employment with Salish Kootenai College. He then filed an action in federal court alleging civil rights violation, Title VII, under sex discrimination. As this Court instructed in Kane, we undertook substantial jurisdictional discovery where we furnished to Mr. McCoy  We then filed a motion to dismiss, which was fully briefed, and Judge Christensen went through each one of the elements of the white test and explained why each one of those elements were satisfied and therefore decided that the college was indeed an arm of the tribe, as virtually every other court that's ever been faced with that issue has also decided and declared rightfully that it was excluded as an employer under Title VII and therefore the federal court lacked subject matter jurisdiction to adjudicate Mr. McCoy's claims. As part of our motion, we submitted a demonstrative exhibit, which is at SER 1 through 55, where we went through every single white factor and cited to the court minutes and documents dating back 40 years, which proved each one of the white elements. Could you speak to his threshold issue about the two different corporations? I will, Your Honor, and I'm going to get to that right now. First of all, to address your question that you propounded to Mr. Coburn was whether or not this issue had been decided before, and the answer to that question is yes. That precise issue was decided by this Court sitting in bank in Smith v. Salish Kootenai College. And just as a refresher on that, what happened there is that Mr. Smith sued Salish Kootenai College and tribal court for damages arising in tort. That case then went up to the Court of Appeals of the Confederated Salish Kootenai Court, and in that Court of Appeals opinion, that identical issue was addressed and argued, in which the plaintiff said that the tribal court didn't have jurisdiction to adjudicate his claims because he was suing the state-incorporated Salish Kootenai College and not the tribal-incorporated Salish Kootenai College. There aren't two colleges. In fact, the appellate court of the Confederated Salish Kootenai Tribes addressed that issue head on and went through it very specifically that there are not two colleges. There's one college that's duly incorporated. The plaintiff, Smith, then filed a case in Federal District Court challenging the decision of the appellate court of the tribe. That then went up to the Ninth Circuit, and that issue was addressed specifically by this Court, and you said that it's a duly incorporated tribal corporation. In any event, Your Honors, that issue was presented to Judge Christensen, and Judge Christensen decided, after weighing all the evidence, that indeed there is only one corporation. And in fact, Mr. McCoy's arguments disregard really the entire record and rely strictly on the articles that were filed with the state, and they disregard and ignore the charter of the tribe, the minutes of the tribe, the resolutions of the tribe, the corporate documents that have been filed with the tribal office, the history of the way that this organization, the Salish Kootenai College, has been treated by the tribal council and by the tribes itself. There's only one Salish Kootenai College. There's always only been one Salish Kootenai College. And regardless, that issue was adjudicated, and there's a preponderance of the evidence to support that conclusion. One other thing I will say about that, and it's not in the record because it actually happened subsequent to Judge Christensen's decision, is that the state incorporation has now been involuntarily dissolved. So there isn't even really a state incorporated Salish Kootenai College, Inc. There's only a tribally incorporated Salish Kootenai College, Inc. And that's not in our record. That's not in your record because, as I said, it happened subsequent to. So it's not really fair game for this argument, right? It really isn't, other than if you write an opinion, I don't want you to say that it's now, you know, incorporated under state law because it isn't any longer. And the reason, I believe, is because they had to face this precise argument in like six different cases. And in each case, the courts have held there's not two corporations, there's only one. And it's a tribally controlled college. It's a tribal corporation that's duly incorporated. And this argument that we have two separate colleges operating on a parallel track is really just a fiction that's been argued and rejected many times before. And regardless, Judge Christensen here dealt with it and rejected it, and that's supported by a preponderance of the evidence. And I'm hoping at some point in my client's existence that that decision will be the end of it, that they'll no longer have to face this concept that there's two different colleges. But in any event, it was disposed of appropriately by Judge Christensen, just as this Court had done in Bank in the Smith case. There's not two different colleges. There's only one. Now, the second test of White has to do with the purpose. And again, Judge Christensen addressed that issue head on and found that the purpose of the college or the purpose of its incorporation and of the college was to further, you know, the various issues with regard to the tribe. One thing I should mention is that in his brief, Mr. McCoy cites a case from the Eastern District of Virginia entitled Williams v. Big Picture Loans, claiming that for the purpose of determining the purpose, one looks to the financial benefit provided to the tribe. In fact, that case from the Eastern District of Virginia was reversed about six weeks ago by the Fourth Circuit Court of Appeals, and you could find that at 929F3-170. Sorry, did you say 929? Yes. Thank you. 929F3-170. And they rejected that analysis, finding, among other things, that it's not the financial benefit that determines the purpose, but whether it furthers tribal self-determination, which is precisely what this college does for this tribe. Again, Judge Christensen addressed that issue at length and found that the purpose of this college was to further the benefits and intentions and goals of the tribe, and that that element, too, was met. Now, the question was asked of Mr. Coburn as with regard to this waiver, whether or not there had potentially been a waiver in the articles. First of all, a clause in articles to sue and be sued is not a waiver of sovereign immunity. You said that in Lanine or Lindeen, and Hagen also held that. I think there's a number of cases that have held that. But more importantly for this case is a defendant can't waive into the Civil Rights Act. You're either an employer and, therefore, defined within the act as a party who can be sued, or you're not. As the Kane court said in the context of the False Claims Act, you can't waive into the False Claims Act. Similarly, in, I want to say, Obacon, I may be pronouncing it wrong, versus Bristol Bay, 300 F-1092-2018. That's a Southern District of California case. They held specifically that you can't waive into a Title VII defense. I think Pink also held that you can't waive into being a Title VII defendant. So the waiver of- What about the contracts that the college has signed with government entities submitting themselves to Title VII? Right. Obacon versus Bristol Bay addressed that issue and said signing a contract by a tribe or a tribal entity that says they agree not to discriminate in violation of Title VII doesn't bring them into Title VII. Again, it's a waiver argument. You can't waive yourself into Title VII. What it does do is that between the contracting parties, the granting authority, and in this case the college, let's say, if the college discriminates, the granting authority can somehow penalize them under the grant for discrimination. That doesn't now, though, bring that entity into outside of being a tribal entity or an arm of the tribe so that it can be sued for Title VII. The contract is not a third-party beneficiary contract for the purposes of the employee? It's not a third-party beneficiary contract in that it allows some third party to sue under Title VII. It doesn't allow anybody to sue under Title VII. You can't contract your way into Title VII if you're not an employer under Title VII. And that's what Cain held. Because Cain, they argued that there had been a waiver that waived them into being defined as a defendant of the False Claims Act. In fact, the first paragraph or two of the Cain opinion says you can't waive yourself into that. You simply can't do it. And this Albuquen case said that as well in the context of Title VII and, in fact, rejected the same argument that McCoy is making right now, that somehow entering into a contract that allowed, you know, a grant contract that has discrimination prohibitions somehow brings you within Title VII. It just doesn't work. You're either in Title VII or you're not. You can't waive yourself in. You can't contract yourself in. In this case, Judge Christensen properly analyzed all the white elements and said, you're an arm of the tribe. That's it. You can't be an employer under Title VII. I don't have any subject matter jurisdiction, Mr. McCoy. You have to take your claims elsewhere. I've just got a few minutes. I'm going to turn it over to Mr. Hunt. Where would he take his claim elsewhere? Pardon me? Where would he take his claim elsewhere? Well, I guess it's my client's position he has no claim. Okay. But did Judge Christensen say you could take a claim elsewhere? No. He said you have no ‑‑ there's no subject matter jurisdiction. That's my editorial. All right. My last statement before I turn this over to Mr. Harrison is these arm of the tribe cases, there's a multitude of cases where they've held that a casino, a payday lender are all arms of the tribe. It would be an absurdity to say that a college named after the tribe located on tribal land with literally a bridge running from the college to the tribal complex is not an arm of the tribe when you're saying casinos and payday lenders are. To me, that would be a ridiculous result. And in any event, Your Honors, Judge Christensen did a good job examining the white factors. He applied the white factors to Mr. McCoy's claims. That is supported by more than preponderance of evidence. I would suggest overwhelming evidence, and I respectfully ask that this Court affirm Judge Christensen and affirm denial of this case for lack of subject matter jurisdiction. Thank you. Good morning. May it please the Court. My name is John Harrison. I'm a tribal attorney with the Confederated Salish and Kootenai Tribes. I just want to – Sir, could you slow down a little so I can understand? Okay. I'm watching the clock here. My name is John Harrison. I'm a staff attorney with the Confederated Salish and Kootenai Tribes. We were an intervener. We were an amicus below. Same thing with the Kane situation. We were an amicus below there and an intervener in the Kane case. Just with the limited time I have, Your Honor, I just want to emphasize one point. Judge Christensen's opinion is consistent. It's consistent with how the federal government has treated Salish and Kootenai College. It's consistent with how courts have treated Salish and Kootenai College. It's consistent with the federal policy behind the tribal college movement that you see in the amicus from the American Indian Higher Education Consortium. Most importantly, it's consistent with how the tribes themselves see and view their college and the entire history of the college and what it means to the Confederated Salish and Kootenai people. Judge Christensen followed a thread. Pink says arms of the tribe are not subject to Title VII. White says you define what an arm of the tribe is by a five-factor test. Kane says the definition for whether Salish and Kootenai College is an arm of the tribe is through the white five-factor test. We're simply here asking you to close that loop now and say the college is, in fact, an arm of the tribe. That's not subject to Title VII. Notwithstanding the Montana incorporation. That's correct, Your Honor. We concur with the college's opinion. There's one college. It has dual incorporation, and issues have been raised, and courts have seen that and said it's one college that has dual incorporation. Courts that have looked at it, no matter what the test was, whether it was in Smith or in White, have said that whatever the test is for the college, it has met the test. Dual incorporation does not divest it of its tribal status. That's consistent with Ninth Circuit law. It's consistent with the federal district decisions in Montana, and it's consistent with Montana corporate law, as we said in our brief. So I see I'm out of time. I'm going to the deficit. I just want to thank you. Please affirm Judge Christensen's opinion. It's consistent. We'd ask you to affirm. Mr. Coburn, I'd like you to pick up where Mr. Harrison left off. Is there any case that you can think of which holds that dual incorporation divests a tribe as to sovereign immunity by virtue of dual incorporation? There are no cases that I can think of, Your Honor. Although we're not saying that there's two colleges, we're saying that there's two corporations and that the facts of this case demonstrate that the college is operating as the Montana Corporation, and therefore, in analyzing the white factors, the court should look at those Montana incorporating documents. And if we do that, what is the, in your view, how do these factors change? What are the most specific important changes that you see, if we were to agree with your premise that there are two different corporations? How does it change? I think, one, the method of creation of the college goes to, obviously it's incorporated under Montana law. I think the structure, ownership, and control or lack thereof is, there's no reservation of any powers or rights to the tribe within those articles. The articles themselves don't mention an intent to share in the sovereign immunity of the tribe, and that is the first point in analyzing whether that's the fourth white factor, intent to share sovereign immunity. And the first point that the court is to look to is to the incorporating documents and see is there a mention of an intent to share in those. Your argument is that we would look to those documents and we wouldn't look to the actual practice or history of who supported who to which board? I think we look to those documents first, but then I also think that when we look at the actual control, as I was discussing previously and as we discussed in our brief, it actually shows that the tribe doesn't actively control, that all the governing decisions are made by the board of directors, that the board of directors typically makes recommendations to the tribe and the tribe just says, okay, yeah, those are good. There hasn't been a removal of a tribal or of a board member by the tribe. And all the documents that the corporation, legally operative documents where they swear under penalty of perjury, such as the Form 990 submitted to the IRS, specifically state that there's no governance decisions given to anybody other than the board of directors of the college, not reserved to anybody other than them. I know it's outside the record, but if it's involuntarily dissolved, what is your purpose of suing the Montana Corporation? Well, the Montana Corporation wasn't involuntarily dissolved when we filed this case and it would still have liability. Is some statutory person responsible for the debts of the Montana Corporation? Certainly. I think we could look to the fact that it's dissolved. There still are the liabilities of those corporations, and then we look to settling that. Thank you very much. Thank you. And with that, we'll thank counsel and submit the case of McCoy v. Salish Kootenai College, Inc. Thank counsel, and please forgive me again for interrupting our session. And we are now in recess.
judges: Farris, Bea, Christen